**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
(at GREENBELT)

| | |
|---|---|
| NISSAN MOTOR ACCEPTANCE COMPANY LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   Civil Action No.: |
| | ) |
| LESTER AUTOMOTIVE GROUP LLC, *d/b/a* NISSAN OF BOWIE, | ) ) ) |
| and | ) ) |
| JEVMOR HOLDING LLC, | ) ) |
| and | ) ) |
| DAMON LESTER, | ) ) |
| Defendants. | ) ) |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, APPOINTMENT OF RECEIVER, WRIT OF REPLEVIN, DAMAGES, AND OTHER RELIEF**

Plaintiff Nissan Motor Acceptance Company, LLC ("NMAC"), by and through undersigned counsel and pursuant to the Fed. R. Civ. P. and this Court's Local Rules (the "L.R."), hereby files this *Verified Complaint for Injunctive Relief, Appointment of Receiver, Writ of Replevin, Damages, and Other Relief* (the "Complaint"), further sues the above-named Defendants, Lester Automotive Group LLC ("LAG"), Jevmor Holding LLC ("Jevmor"), and Damon Lester ("Lester"; together with LAG and Jevmor the "Defendants"), and, in support thereof, alleges as follows:

**PARTIES**

1. NMAC is a Delaware limited liability company that, at all times pertinent hereto, has maintained a principal office at 8900 Freeport Parkway, Irving, Texas.

1

2. LAG is a Maryland limited liability company that, at all times pertinent hereto, has maintained its principal office at 2200 Robert S. Crain Highway, Bowie, Maryland 20716 (the "Dealership Premises").

3. LAG may be served with process through its registered agent in Maryland, Steven M. Nemeroff, located at 4710 Bethesda Avenue, Suite 203, Bethesda, Maryland 20814.

4. Jevmor is a Maryland limited liability company that, at all times pertinent hereto, has maintained its principal office at 12806 Contee Manor Road, Bowie, Maryland 20721.

5. Jevmor may be served with process through its registered agent in Maryland, United States Corporation Agents, Inc., located at 6959 Golden Ring Road, Rosedale, Maryland 21237.

6. Lester is an individual who resides and may be served with service of process at 12806 Contee Manor Road, Bowie, Maryland 20721.

## JURISDICTION AND VENUE

7. For diversity purposes, NMAC is wholly owned by its sole member, Nissan North America, Inc., a Delaware corporation, with its principal place of business at 1 Nissan Way Stop A-5-C, Franklin, Tennessee, and, as such, NMAC is a citizen of the states of Delaware and Tennessee.

8. Upon information and belief, Lester is a citizen of the State of Maryland.

9. Upon information and belief, Lester is the sole member of LAG; and, therefore, LAG is a citizen of Maryland for diversity purposes.

10. Upon information and belief, Lester is the sole member of Jevmor; and, therefore, Jevmor is a citizen of Maryland for diversity purposes.

11. The amount in controversy with respect to this dispute exceeds $75,000.00, exclusive of attorneys' fees and costs.

12. On information and belief, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between NMAC, on the one hand, and the Defendants, on the other hand, and the amount in controversy exceeds $75,000.00.

13. Defendants LAG and Lester are located within the Southern Division, at Greenbelt, in the District of Maryland.

14. Defendant LAG is located within the Northern Division, at Baltimore, in the District of Maryland; although, upon information and belief, LAG's sole asset is its fee simple ownership of the real property and improvements at the Dealership Premises.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as two Defendants reside and/or are located within the District of Maryland (Southern Division, at Greenbelt) and a substantial part of the events or omissions giving rise to NMAC's claims occurred within the District of Maryland (Southern Division, at Greenbelt).

## INTRODUCTION

16. Lester is the sole member and manager of LAG and Jevmor.

17. LAG owns and operates a Nissan automobile dealership located at the Dealership Premises and commonly known by the trade name, Nissan of Bowie (the "Bowie Dealership").

18. Jevmor is the owner of the real property and improvements at the Dealership Premises and, upon information and belief, leases the Dealership Premises to its affiliate LAG.

19. NMAC is a secured creditor of LAG and Jevmor, and seeks relief, *inter alia*, to protect NMAC's interest in NMAC's collateral—including the assets of the Bowie Dealership and the Dealership Premises.

20. As will be alleged in more detail below, LAG has been selling new vehicle inventory constituting a portion of NMAC's collateral "out of trust" and has failed to remit payment to NMAC under the terms of the Floorplan Agreement (defined below). LAG's defaults have triggered a cross default on NMAC's separate loan to Jevmor, which is secured by a first-priority mortgage lien on the Dealership Premises.

21. Under the terms of the operative Loan Documents (defined below) as well as Maryland law, NMAC is entitled to immediate injunctive relief to protect its collateral from waste, preserve the collateral value, and account for, and collect the income generated therefrom, until a receiver can be put into place, or, if no receiver is appointed, until this Honorable Court issues a permanent injunction.

22. NMAC is also entitled to the appointment of a receiver to protect its collateral including, but not limited to, vehicle inventory, accounts, and the proceeds thereof; or, in the alternative, NMAC seeks a writ of replevin and, if necessary, judgment in detinue, so that it can take possession and dispose of the vehicle inventory pursuant to the terms of the Loan Documents and applicable law.

23. NMAC further seeks a money judgment against all Defendants herein for the outstanding balances of the loans and such other sums as NMAC is entitled to claim and recover under the Loan Documents.

## FACTUAL ALLEGATIONS

### A. The Loan Documents

#### i. The Floorplan Loan

24. On or about April 9, 2021, LAG entered into an Automotive Wholesale Financing and Security Agreement with NMAC (the "Floorplan Agreement"), whereby NMAC advanced

floorplan financing (the "Floorplan Loan") to LAG for the purchase of inventory and other items for the Bowie Dealership, in exchange for payment as inventory was sold, in the ordinary course of business, at the Bowie Dealership.  A true copy of the Floorplan Agreement is attached as **Exhibit A** and made a part hereof by reference.

25. Pursuant to Section 2.4 of the Floorplan Agreement, LAG granted NMAC a security interest in the following property (collectively, the "UCC Collateral"):

> 2.4.1   Property, including all automobiles, trucks, truck-tractors, trailers, semi-trailers, buses, mobile homes, motor homes, other vehicles and other merchandise and all parts, accessories, attachments, components and furnishings whether or not affixed thereto or used in connection therewith, including all goods hereafter added to or acquired in replacement or substitution of the foregoing, whether or not inventory or other and whether or not new, used, repossessed, surrendered or other;
>
> 2.4.2   All other goods, including without limitation, all inventory, machinery, equipment, tools, appliances and office furniture and fixtures, including all goods hereafter added to or acquired in replacement of the foregoing;
>
> 2.4.3   All accounts, accounts receivable, chattel paper, security agreements, instruments, contract rights, leases of property, all rentals due or to become due under any lease of any property, all other rentals, policies and certificates of insurance, deposit accounts, investment property, dealer reserve accounts, manufacturer's statements of origin (MSO's) or certificates of title or ownership relating to vehicles, bills of sale, receipts, journals, records, files, books and ledger sheets, records indicating, summarizing or evidencing Dealer's business operations or financial condition and all computer programs, disk or tape files, printouts, runs or other computer-prepared information and the equipment containing such information, documents and general intangibles, including all monies and credits now due or to become due to Dealer from, and all claims against, vendors of inventory or other lending institutions;
>
> 2.4.4  All other assets of Dealer, with the exception of real property, but including the fixtures; and
>
> 2.4.5  All cash and non-cash proceeds of the foregoing.

5

26. NMAC perfected its security interest in the UCC Collateral by filing a Uniform Commercial Code Financing Statement (or "UCC-1") with the Maryland State Department of Assessments and Taxation on April 1, 2021 at No. 210401-1247000. A copy of NMAC's duly recorded UCC-1 is attached hereto as **Exhibit B**.

27. The Floorplan Agreement is further secured by, among other things, that certain Continuing Guaranty Agreement dated April 8, 2021, executed by Damon Lester and Michael Morelli in favor of NMAC, a true copy of which is attached as **Exhibit C** (the "Lester Floorplan Guaranty").

28. The Floorplan Agreement is further secured by, among other things, that certain Continuing Guaranty Agreement dated April 8, 2021, executed by Jevmor in favor of NMAC, a true copy of which is attached as **Exhibit D** (the "Jevmor Floorplan Guaranty"; together with the Lester Guaranty, the "Floorplan Guaranties").

29. Pursuant to the Floorplan Guaranties, Lester and Jevmor each unconditionally guaranteed LAG's payment and performance of its obligations to NMAC under the Floorplan Agreement.

## ii.  *The Real Property Loan*

30. On or about July 20, 2021, NMAC made a loan (the "Real Property Loan," and collectively with the Floorplan Loan, the "Loans") to Jevmor in the original principal amount of $10,800,000.00.

31. The Real Property Loan is evidenced by, among other things, a Promissory Note in the original face amount of $10,800,000.00, dated July 20, 2021, and executed by Jevmor in favor of NMAC, as amended on June 1, 2022 and thereafter on September 1, 2024, together with any other unstated amendments and/or modifications (the "Real Property Note"). A copy of the

Real Property Note, together with the two amendments, is attached hereto as collective **Exhibit E**.

32. The Real Property Loan is secured and further evidenced by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing executed by Jevmor in favor of NMAC, dated July 20, 2021 and recorded on August 2, 2021 in the Land Records for Prince Georges County, Maryland, at Book 45958, Page 0260 (the "Deed of Trust").  A true copy of the Deed of Trust is attached hereto as **Exhibit F**.

33. The Deed of Trust encumbers the land and improvements at the Dealership Premises, as well as the rents generated therefrom.

34. The Real Property Loan is further secured by, among other things, that certain Guaranty dated July 20, 2021, executed by LAG and Lester in favor of NMAC, a true copy of which is attached as **Exhibit G** (the "Real Property Note Guaranty").

35. Pursuant to the Real Property Note Guaranty, LAG and Lester unconditionally guaranteed Jevmor's payment and performance of its obligations to NMAC under the Real Property Note.

   iii.   *The Cross Agreement*

36. On or about July 20, 2021, LAG, Lester, Jevmor, and NMAC entered into a Cross-Guaranty, Cross-Collateral and Cross-Default Agreement (the "Cross Agreement") pursuant to which LAG, Lester, and Jevmor each jointly and severally accepted liability for all obligations owed to NMAC under, *inter alia*, the Floorplan Loan, the Real Property Loan, and the Loan Documents related thereto.  A true copy of the aforementioned Cross Agreement is attached hereto as **Exhibit H**.

37.     The Floorplan Agreement, the Lester Floorplan Guaranty, the Jevmor Floorplan Guaranty, the Real Property Note, the Deed of Trust, the Real Property Guaranty, the Cross Agreement, and any and all agreements, instruments, financing statements, and other documents executed by Defendants or recorded in connection therewith are collectively referred to herein as the "<u>Loan Documents</u>."

**B.    The Defaults**

    *i.    The Floorplan Loan Defaults*

38.     Prior to the filing of this action, LAG defaulted on its payment obligations to NMAC under the Floorplan Agreement by virtue of its failure to pay all sums when due thereunder.

39.     Specifically, LAG sold at least twenty-nine (29) vehicles "out of trust," meaning that LAG sold these vehicles and failed to remit the payment due NMAC in connection with each such sale, as required by the terms of the Floorplan Agreement.

40.     By letter dated December 10, 2024 (the "<u>Floorplan Default Letter</u>"), NMAC provided notice that LAG is in default under the Floorplan Agreement by virtue of LAG's failure and refusal to remit payments totaling $797,677.97.  NMAC demanded that LAG cure the default by December 12, 2024.  A true copy of the Floorplan Default Letter is attached hereto as **Exhibit I**.

41.     LAG (and the other Defendants) failed to timely cure the defaults specified in the Floorplan Default Letter.

42.     As a result of LAG's breach of the Floorplan Agreement and failure to timely cure, NMAC exercised its right to suspend further advances under the Floorplan Agreement.

8

43. In addition to the foregoing, upon information and belief, LAG further defaulted under the Floorplan Agreement by breaching its covenants to "keep all Collateral free from … liens and encumbrances other than liens in favor of NMAC or as approved by NMAC in writing" and to refrain attempting to "sell, transfer, lease, mortgage, pledge, or in any way dispose of all or any part of the Collateral[.]" *See* Exhibit A, Floorplan Agreement, at § 3.2.

44. Recently recorded copies of UCC-1s, compiled hereto as **Exhibit J**, reflect that since January 2024 LAG: (i) granted inferior liens on the UCC Collateral, (ii) pledged the UCC Collateral, and (iii) entered into agreements for the sale of its future receivables.

45. The forgoing acts were taken without NMAC's knowledge or consent.

46. Upon further information and belief, proceeds from the sales of NMAC's UCC Collateral may have been diverted to such inferior lenders.

47. As of December 16, 2024, the Floorplan Loan had an outstanding balance of **$6,306,113.74**, exclusive of legal fees and costs, as itemized below:

| | |
|---|---|
| $1,546,477.07 | Principal (SOT) |
| $4,683,999.94 | Principal (Remaining Vehicle Inventory) |
| $77,308.19 | Accrued Interest |
| $2,410.91 | Insurance Charges |
| $11,624.42 | Curtailments Due |
| ($15,706.79) | Suspense Balance |
| **$6,306,113.74** | Total Balance |

48. Interest, fees, and other charges have continued to accrue under the Floorplan Agreement after December 16, 2024, as provided in the Floorplan Agreement and the related Loan Documents.

49. Interest is currently accruing under the Floorplan Agreement at the contractual default rate of 12.75% percent per annum (calculated at 5% above the Rate of 7.75% set forth in the applicable NMAC Bulletin).

9

50. By letter dated December 20, 2024 (the "Floorplan Acceleration Letter"), NMAC notified Defendants of NMAC's election to terminate the Floorplan Agreement and accelerate the Floorplan Loan. A true copy of the Floorplan Acceleration Letter is attached hereto as **Exhibit K**.

51. Section 5.2 of the Floorplan Agreement provides NMAC with various remedies upon default, including, but not limited to: (a) the right to suspend financing, (b) the right to accelerate the balance due NMAC, and (c) the right to take possession of and dispose of the UCC Collateral. *See* Exhibit A, Floorplan Agreement, at § 5.2.

52. In Section 5.2 of the Floorplan Agreement, LAG further acknowledged all other rights and remedies of NMAC available at law or equity in the event of default:

> Upon default, NMAC shall have all rights and remedies available at law or equity, including all the rights and remedies of a secured creditor under the Uniform Commercial Code with respect to the Collateral and all other security under any other agreements between NMAC and Dealer. All rights and remedies of NMAC shall be cumulative and not in the alternative.

*See* Exhibit A, Floorplan Agreement, at § 5.2.

53. In the Loan Documents, LAG acknowledged NMAC's right to apply for the appointment of a receiver of LAG's property, including the UCC Collateral, upon a default by LAG.

54. Section 5.3 of the Floorplan Agreement provides:

> Dealer grants to NMAC, in the event of a default, the right to take possession of the Collateral and any other security by any means not involving a breach of the peace and to sell, lease or in any way dispose of the same. For this purpose, NMAC may enter the premises where the Collateral or other security is located and may remove the same to any other place NAMC may determine, and Dealer waives, to the extent permitted by law, any notice or hearing with respect to the taking of possession. NMAC may, as it deems appropriate, place a representative or contractor at any

10

> Dealership Location of Dealer to act as liaison between NMAC and the Dealer to monitor transactions and to otherwise inspect all business records of Dealer and to monitor all transactions relating to the sale of any item of Collateral given as security under this Agreement. **NMAC shall have the right to apply for the appointment of a receiver of Dealer's property, including the Collateral.** Dealer shall, upon NMAC's demand, assemble and make the Collateral or other security available to NMAC at a place to be designated by NMAC that is reasonably convenient to both parties. Further, NMAC may collect all monies and credits then due, or to become due, to Dealer from, and all claims of Dealer against, manufacturers or distributors of inventory or other lending institutions.

*See* Exhibit A, Floorplan Agreement, at § 5.3 (emphasis added).

55. In addition to the foregoing, NMAC is entitled to recover its reasonable attorney's fees and expenses pursuant to the terms of the Floorplan Agreement.

56. Any and all conditions precedent to NMAC's enforcement of and recovery under the Floorplan Agreement have been performed, waived, or otherwise satisfied.

### ii. The Real Property Loan Defaults

57. Pursuant to the Cross Agreement, a default under the Floorplan Agreement constitutes a default under the Real Property Note and Deed of Trust (and *vice versa*).

58. As of December 16, 2024, the Real Property Note had an outstanding balance of **$10,386,129.60**, exclusive of legal fees and costs, as itemized below:

| | |
|---|---|
| $10,279,903.92 | Principal |
| $106,225.67 | Accrued Interest |
| **$10,386,129.60** | **Total Balance** |

59. Interest, fees, and other charges continue to accrue under the Real Property Note after December 16, 2024, as provided in the Real Property Note and the related Loan Documents.

11

60. Interest, fees, and other charges have continued to accrue under the Real Property Note after December 16, 2024, as provided in the Real Property Note and the related Loan Documents.

61. The Deed of Trust provides for the appointment of a receiver in the event of a default to, *inter alia*, enter on and take possession of the Real Property and rents encumbered by the Deed of Trust, to take any acts necessary to preserve the value, marketability or rentability of the Real Property, including through the sale of the Real Property encumbered by the Deed of Trust. *See* Exhibit F, Deed of Trust, at § 6.2.1.

62. In addition to the foregoing, NMAC is entitled to recover its reasonable attorney's fees and expenses pursuant to the terms of the Real Property Note and Deed of Trust.

63. Any and all conditions precedent to NMAC's enforcement of and recovery under the Real Property Note and Deed of Trust have been performed, waived, or otherwise satisfied.

**COUNT I**
**Injunctive Relief**
**(<u>Against All Defendants</u>)**

64. NMAC realleges and incorporates the preceding paragraphs of this Complaint as if fully stated herein.

65. Defendant LAG granted NMAC a security interest in the UCC Collateral. *See* Exhibit A, Floorplan Agreement at §2.4.1-2.4.5.

66. The UCC Collateral includes, among other things, 125 vehicles believed to be in LAG's possession at the Dealership Premises, more particularly described on **Exhibit L** hereof (the "<u>Remaining Vehicle Inventory</u>"), a true and correct coy of which is attached hereto.

67. NMAC duly perfected its security interest in the UCC Collateral on April 1, 2021 and, on information and belief, NMAC has a first-priority security interest in the UCC Collateral.

68. The Floorplan Agreement provides NMAC with various remedies upon default including, but not limited to, (a) the right to suspend financing, (b) the right to accelerate the balance due NMAC, and (c) the right to take possession of and dispose of the UCC Collateral. *See* Exhibit A, Floorplan Agreement, at §5.2.

69. Defendant LAG has breached the Floorplan Agreement by selling and continuing to sell inventory "out of trust" without making the corresponding payments due NMAC from the proceeds of each such sale as required.

70. As of December 30, 2024, LAG was out of trust with NMAC for forty-eight (48) vehicles included within the UCC Collateral, with an aggregate principal amount of $1,327,500.73 due and owing to NMAC with respect to such vehicles.

71. By virtue of the foregoing, NMAC is gravely concerned about the continued "out of trust" status for the UCC Collateral and the risk that the "out of trust" status will only continue to increase—if, for example, LAG continues to sell vehicle inventory during the pendency of this action without remitting the corresponding floorplan balances to NMAC in accordance with the Floorplan Agreement.

72. Equity dictates that NMAC be granted a temporary restraining order and, upon hearing, a preliminary and permanent injunction: (a) prohibiting LAG, the other Defendants, and each person acting in concert or participation with Defendants from selling, leasing, or disposing of any UCC Collateral, absent LAG's strict compliance with the Floorplan Agreement as supplemented by the Court's order(s), (b) directing LAG to account for all sales and proceeds it has collected on UCC Collateral sold out of trust since July 1, 2024, and (c) imposing such other restraints and restrictions to protect NMAC's interest in the UCC Collateral during the pendency of this case, upon motion by NMAC.

73. NMAC will suffer immediate and irreparable injury, loss, and damage unless Defendants are restrained and enjoined as requested hereunder.

74. NMAC is likely to prevail on the merits of this Complaint, and the balance of equities and the public interest favor entry of the requested equitable relief.

75. Unless such equitable relief is granted by the Court, the injuries, losses, and damages to NMAC cannot likely be remedied by money damages alone.

76. Because NMAC has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Complaint, the equitable relief sought herein is appropriate.

## COUNT II
### Appointment of Receiver
### (Against LAG and Jevmor)

77. NMAC realleges and incorporates the preceding paragraphs of this Complaint as if fully stated herein.

78. As of the date hereof, LAG remains in possession of the UCC Collateral and the Dealership Premises, where the vehicle inventory and certain other UCC Collateral is located.

79. As of the date hereof, LAG is continuing to operate the Bowie Dealership in total disregard for its obligations to NMAC and NMAC's interest in the UCC Collateral.

80. Under the Floorplan Agreement, LAG agreed that, in the event of a default thereunder, NMAC is entitled to, *inter alia*, enter the Bowie Dealership, take possession of the UCC Collateral, and dispose of the UCC Collateral.

81. Under the Floorplan Agreement, LAG also acknowledged NMAC's right to apply for the appointment of a receiver of LAG's property after a default, including the UCC Collateral and other assets comprising the Bowie Dealership. *See* Exhibit A, Floorplan Agreement at §5.3.

82. NMAC seeks the appointment of a receiver to enter upon and take full control of the Bowie Dealership and to do all such acts necessary for the management, operation, maintenance, and preservation of the UCC Collateral, including the sale of such UCC Collateral, whether in the ordinary course or as part of a sale of the Bowie Dealership.

83. Likewise, pursuant to the Cross Agreement, the Deed of Trust is now in default. The Deed of Trust provides for the appointment of a receiver in the event of a default to, *inter alia*, enter on and take possession of the Dealership Premises and rents encumbered by the Deed of Trust, to take any acts necessary to preserve the value, marketability or rentability of the Dealership Premises, including through a sale. *See* Exhibit F, Deed of Trust, at § 6.2.1.

84. Thus, NMAC is entitled to the appointment of a receiver both as a matter of contract and pursuant to the Maryland Commercial Receivership Act. *See* Md. Code Ann., Comm. Law § 24-101, *et seq*.

## COUNT III
## Replevin
## (Against LAG)

85. NMAC realleges and incorporates the preceding paragraphs of this Complaint as if fully stated herein.

86. In the event the Court will not appoint a receiver or NMAC elects at a later date to repossess and dispose of the vehicle inventory independent of a receiver, NMAC is entitled to a writ of replevin, pursuant to Maryland Rule 12-601.

87. NMAC avers that, under Section 5.3 of the Floorplan Agreement, NMAC has the right to take immediate possession of all of the UCC Collateral in the event of a default.

88. NMAC is entitled to the return of the Remaining Vehicle Inventory and is entitled to have the Remaining Vehicle Inventory detained and to be put in possession thereof.

89. NMAC requests that the Court issue a Writ of Replevin in NMAC's favor and enter an order directing that the Remaining Vehicle Inventory be turned over to NMAC so that NMAC can exercise its rights and remedies in and to the same under the Floorplan Agreement, the related Loan Documents, and applicable state law.

## COUNT IV
### Detinue
### (Against LAG)

90. NMAC realleges and incorporates the preceding paragraphs of this Complaint as if fully stated herein.

91. LAG continues to hold and possess the Remaining Vehicle Inventory, which is subject to NMAC's first-priority, properly perfected security interest.

92. Thus, NMAC has an ownership interest in the Remaining Vehicle Inventory that is superior to all other potential creditors and Defendants.

93. In the event the Court will not appoint a receiver or NMAC elects at a later date to repossess and dispose of the vehicle inventory independent of a receiver, NMAC is entitled to an Order in Detinue and any ancillary documentation needing to be issued therewith, pursuant to Maryland Rules 12-601-602.

94. NMAC requests that this Court issue an Order in Detinue: (1) awarding permanent and sole possession of the Remaining Vehicle Inventory to NMAC, or (2) in the alternative, payment of the Remaining Vehicle Inventory's value, to NMAC, by LAG.

## COUNT V
### Breach of Contract – Floorplan Loan
### (Against All Defendants)

95. NMAC realleges and incorporates the preceding paragraphs of this Complaint as if fully stated herein.

96. LAG executed the Floorplan Agreement and agreed to comply with its terms as set forth therein in consideration of receiving the Floorplan Loan.

97. LAG is indebted to NMAC under the terms of the Floorplan Agreement and the other Loan Documents.

98. LAG breached the Floorplan Agreement by failing to make payments to NMAC as and when due thereunder.

99. LAG also breached the Floorplan Agreement by virtue of its actions in granting liens in the UCC Collateral to other creditors or parties without NMAC's knowledge or consent.

100. NMAC properly exercised its right to accelerate the balance of the Floorplan Agreement.

101. Pursuant to the Floorplan Guaranties and the Cross Agreement, Lester and Jevmor are jointly and severally liable for LAG's obligations to NMAC under the Floorplan Agreement.

102. Defendants are thus jointly and severally liable to NMAC for the outstanding balance of the Floorplan Agreement in an amount to be proven at trial.

103. In addition to the foregoing, Defendants are jointly and severally liable to NMAC for reasonable attorney's fees and expenses pursuant to the terms of the Floorplan Agreement and related Loan Documents.

**RESERVATION OF RIGHTS**

104. NMAC reserves the right to proceed with non-judicial remedies in protection of the UCC Collateral as set forth in the Loan Documents and under applicable law. NMAC further reserves all other rights and remedies under the Loan Documents and applicable law.

105. NMAC further reserves the right to amend this Complaint to set forth additional facts regarding the defaulted Loans described herein or any other loans or obligations owed by one or more Defendants to NMAC.

**WHEREFORE,** having stated its Complaint against these Defendants herein above, NMAC is seeking the following relief in this action:

A. Under Count I, a temporary restraining order and, upon hearing, a preliminary and permanent injunction, against Defendants upon the terms described in more detail in Count I, any motion filed requesting such relief, and any other terms the Court deems just and proper to protect NMAC's interest in the UCC Collateral;

B. Under Count II, an order appointing a receiver for the UCC Collateral, the Bowie Dealership, and the Dealership Premises upon the terms described in more detail in Count II and any motion filed requesting such relief, with all rights and powers provided under the Loan Documents and to receivers pursuant to Maryland law;

C. Under Count III, a Writ of Replevin directing LAG and any other persons or entities in possession of the UCC Collateral, including the Remaining Vehicle Inventory, to turn over such property to NMAC and NMAC's designated agents;

D. Under Count IV, an Order in Detinue: (1) directing LAG and any other persons or entities in possession of the UCC Collateral, including the Remaining Vehicle Inventory, to turnover such property to NMAC and/or NMAC's designated agents; or, in the alternative (2) payment of the value of the UCC Collateral, including the Remaining Vehicle Inventory;

E. Under Count V, for judgment in in favor of NMAC and against Defendants (joint and several) for any and all amounts due and owing under the Floorplan Agreement, together with (i) reasonable attorney's fees and costs, and (ii) post-judgment interest at the applicable; and

F.   Under all Counts, any other legal and equitable relief that this Court deems just and proper.

Submitted by:

*/s/ Lacey E. Rochester*
Lacey E. Rochester (Bar No. 31371)
Stuart R. Goldberg (Bar No. 21236)
BAKER DONELSON BEARMAN
 CALDWELL & BERKOWITZ PC
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Phone: (410) 862-1149
Email: lrochester@bakerdonelson.com
Email: sgoldberg@bakerdonelson.com

**Counsel for Plaintiff**
